[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ARTICULATION OF DECISION AS TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
In a prior foreclosure action involving the same parties as this action, Bank of Boston Connecticut (BBC) obtained on January 24, 1994, a default judgment of strict foreclosure upon a mortgage as to property owned by plaintiff Leon H. Woja (Woja) and his wife. Subsequently co-defendant Equestrian Estates Development Corp. (EED) was substituted as plaintiff in that foreclosure and had the law, day extended to June 13, 1994. Woja did not appear in that action prior to judgment but admits to having notice of it. None of the defendants, including Woja, redeemed and title vested in EED.
Subsequently, Woja and his wife filed a motion in that action seeking the vacating of the strict foreclosure or in the alternative the payment to Woja and his wife of their claimed equity in the foreclosed property. Mrs. Woja, upon whom service was in dispute, settled her claim and, by his own admission, Woja counsel (the same in both actions) did not pursue the motion on Woja's behalf because "Woja's claims as set forth in the action were not going to persuade any judge to decide in his favor." (Woja's Memorandum of Law of March 9, 1998 p. 6).
In this action, as amended, Woja now sues both BBC and EED in four counts. The first claims, in essence, that the property should have been foreclosed by sale because Woja did not expect or agree that defendants could realize a claimed windfall of equity value above the encumbrance amounts. It sounds in breach of an implied covenant of good faith between Woja and the defendants arising from the mortgage and note.
The other three counts sound in unjust enrichment, CUTPA and CUTPA and contain, inter alia, allegations that the attorneys for BBC and/or a BBC employee was in contact with Woja during the CT Page 9653 foreclosure, promised to look into Woja's claim that the note being foreclosed upon had been superseded by a subsequent note and to advise Woja as to such and by failing to do so recklessly or intentionally mislead Woja to believe the foreclosure was not proceeding. As to counts two and three. The allegations are found in the complaint at paragraph 28. As to count four, in the complaint at paragraph 12. As to the last three counts, Woja's affidavit supports the claims of a failure to respond to him at paragraphs 9, 10 and 12 of same.
Defendants moved for Summary Judgment on the basis that the foreclosure action was res judicata and/or collateral estoppel as to Woja's claims. The motion was filed February 6, 1998, argued on April 13, and decided April 27, 1998. The defendants subsequent Motion for Articulation was granted on July 24, 1998.
The court in weighing the Motion for Summary Judgment applies the well established test that the motion should be granted only where the affidavits and other submitted proofs show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Miller v. United Technologies Corp. ,233 Conn. 732, 744-5 (1995). As to the First Count, there is no genuine issue of material fact, the foreclosure action is res judicata as to that claim and judgment is entered for defendants. As to the remaining counts, neither res judicata nor collateral estoppel apply and the motion is denied.
Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment is an appropriate method for resolving such. Zizka v. Water Pollution ControlAuthority, 195 Conn. 682, 687, 490 A.2d 509 (1985). Sometimes used interchangeably the concepts arise from the same principle:
 "The terms res judicata and collateral estoppel refer to the concepts of claim preclusion or issue preclusion respectively. Both claim preclusion and issue preclusion "express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." State v. Ellis, 197 Conn. 436, 465, 497 A.2d 974 (1985). Although claim preclusion and issue preclusion often appear to merge into one another in practice, analytically they are regarded as distinct. `[C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit.' (Internal quotation marks omitted.) Scalzo v. Danbury,
CT Page 9654 224 Conn. 124, 128, 617 A.2d 440 (1992) (citations omitted)."
Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 627 A.2d 374 (1993) at paces 12-13.
Res judicata focuses on claims which were or could have been made in the earlier case. Collateral estoppel focuses on the issues necessarily determined in the earlier case.
 "Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." In re Juvenile Appeal (83-DE), 190 Conn. 310, 316, 460 A.2d 1277
(1983)).
 "`For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment."' Virgo v. Lyons, 209 Conn. 497, 501, 551 A.2d 1243
(1988).
Jackson supra at 714.
While the foreclosure here was a default judgment, that does not preclude the application of res judicata or collateral estoppel:
 "Although not every default judgment should have the same issue preclusive effect as an actual adjudication between the present parties, in the interest of judicial economy and repose for litigants, we envision some circumstances where it would be appropriate to give issue preclusive effect to a default judgment. We have previously noted, after addressing the scope of issue and claim preclusion, that the appropriate inquiry with respect to both types of preclusion is whether the party had an "adequate opportunity to litigate the matter in the earlier proceeding. . . ."' (Internal quotation marks omitted.) State v. Ellis, supra, 464-65 n. 22, quoting D. Currie, "Res Judicata: The Neglected Defense," 45 U. Chi. L. Rev. 17, 342 (1978). Our decision in Ellis indicates that had there been a full and fair opportunity to litigate issues and such issues were necessary to a default judgment, that judgment should put to rest subsequent litigation of all issues necessary for the rendering of the default judgment."
Jackson, supra at 717-18. CT Page 9655
Applying the test set forth in Jackson to the four counts in the current complaint, the court finds both the concept of res judicata and collateral estoppel inapplicable to the Second through Fourth Counts. Sounding as they do in CUTPA and unjust enrichment and relying on a factual claim that defendants' agents in some way misled Woja into believing the foreclosure was not proceeding, the court cannot find that there was a full and fair opportunity to litigate these claims, nor that they were necessarily determined as issues in the foreclosure action. They raise, supported by Woja's affidavit, issues that a court would not ordinarily rule upon in a default judgment foreclosure.
However, the claim in the First Count, read fairly, is no more or less than a complaint that the foreclosed property should have gone by sale and not strict foreclosure, because of the equity for the defendant owners. Woja would have more than adequate opportunity to litigate such a claim in a foreclosure and the court would necessarily have considered the issue of equity if he had merely timely filed a motion seeking a foreclosure by sale.
 "In a foreclosure proceeding, the trial court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to subsequent encumbrancers and the owner. We have stated: "The remedy of the second mortgagee in such a case as this, if he cannot or does not wish to redeem, is by application for an order of sale under the statutes; General Statutes § 5112, et seq.; and we have suggested that one purpose of this statutory remedy was to meet just such a situation as is here present. Staples v. Hendrick, [89 Conn. 100, 93 A. 5 (1915)]. It is true that the grant of such an application rests in the sound discretion of the court; Page 491 Bradford Realty Corporation v. Beetz, [supra, 31]; but if there is need of a sale to protect the just rights of the parties, we have little fear that the court will not order it." New Haven Bank v. Jackson, 119 Conn. 451.455, 177 A. 387
(1935).
Fidelity Trust Co. v. Irick, 206 Conn. 484, 538 A.2d 1027 (1988) at pages 490-491.
There is no question but that Woja, who had notice of the suit, could have raised the same claim set forth in the First Count here, in the earlier foreclosure action. Indeed, he did raise it, albeit belatedly in his motion to reopen or force BBC CT Page 9656 or EED to pay equity to Woja. That he abandoned it because his counsel felt it was "not [going] to persuade any judge" does not in any way erase the fact that he could have raised it earlier and had it decided in a timely fashion.[1] Res judicata bars any claim that was or could have been raised in the prior action.Gagne v. Norton, 189 Conn. 29 (1983).
James T. Graham Judge, Superior Court